This timely appeal comes for consideration upon the record in the trial court and the parties' briefs. Plaintiff-Appellant, Daniel T. Wilkinson (hereinafter "Daniel"), appeals the trial court's division of the marital property between he and Defendant-Appellee, Cheryl A. Wilkinson (hereinafter "Cheryl"), his ex-wife. This appeal brings two issues before this court: 1) whether Daniel's personal injury settlement is marital property, and; 2) what portions of the personal injury settlement were guaranteed and which were contingent for purposes of determining spousal support. For the following reasons, we conclude the trial court properly divided the marital property and determined spousal support and affirm its decision.
Daniel and Cheryl were married on February 19, 1981, and have one child, Margaret G. Wilkinson (hereinafter "Maggy"), who was born on May 21, 1983. Daniel was employed as a lineman and Cheryl was employed as a grocery store clerk with Krogers. On January 8, 1987, Daniel was seriously injured when he suffered a crushed back and severe internal injuries in an automobile accident in the course of his employment. These injuries hospitalized Daniel for three months and necessitated a year in physical therapy. On March 7, 1998, Daniel and Cheryl both signed a settlement and release of claims for damages caused by the accident. The pertinent portion of the personal injury settlement is structured as follows:
 "1) An initial lump sum payment of $391,840.20 was received before the settlement was signed and made payable to Daniel, Cheryl and their personal injury lawyers. After deducting $275,000.00 for attorney's fees, Daniel and Cheryl received a check payable to both of them for $116,840.20. (`Initial Net Payment').
 2) Monthly payments of $3,500.00 payable to Daniel T. Wilkinson on the twenty-third of each and every month commencing March 23, 1988 and continuing for the longer of the following two time periods: (I) until the death of Daniel T. Wilkinson; or, (ii) for twenty years (240 monthly payments). (`Monthly Payments'). If Daniel dies before February 23, 2008, the payments `shall be made as due to his estate.'
 3) Deferred lump sum payments payable to Daniel T. Wilkinson on dates specified:
 $50,000.00 February 23, 1993 ("Deferred Payment A")
 $75,000.00 February 23, 1998 ("Deferred Payment B")
 $150,000.00 February 23, 2003 ("Deferred Payment C")
 $250,000.00 February 23, 2008 ("Deferred Payment D")
 If Daniel dies before February 23, 2008, any remaining payments `shall be made as due to his estate.'
 4) Annual payments were set up for Margaret Grace Wilkinson in the sum of $20,000.00 payable to Maggy on May 21st of each and every year, commencing May 21, 2001, and continuing through May 21, 2004, (4 annual payments). If Maggy dies before May 21, 2004 the payments `shall be made as due to her estate.'"
Daniel did not return to work following his recovery and Cheryl took a leave of absence from her job. During that period, Cheryl was trained at the rehabilitation center to care for Daniel. These duties included spotting Daniel on steps in case he fell, cleaning catheters, and digital stimulation for bowel movements. Following her leave of absence, Cheryl returned to work only long enough to ensure her pension and retired in 1988.
Subsequent to Daniel's accident, both Daniel and Cheryl's health deteriorated. Daniel suffered a cerebral aneurysm requiring surgery in June of 1995 and a heart attack in September of 1997. Cheryl was diagnosed with emphysema and chronic obstructive pulmonary disease in 1995.
Daniel and Cheryl separated on October 25, 1997 and, on November 4, 1997, Cheryl filed a complaint for divorce in the Columbiana County Court of Common Pleas, Case Number 97 DR 643. Daniel refused service of that complaint and filed his own complaint for divorce under the instant Case Number 97 DR 679. Both pending divorce actions were consolidated on December 18, 1997 by the magistrate. The trial court's Opinion and Judgment Entry was filed on June 16, 1999. Daniel filed a notice of appeal on July 9, 1999.
Daniel appeals the trial court's divorce decree, asserting the trial court abused its discretion by: 1) classifying Daniel's personal injury settlement as marital property, and; 2) incorrectly calculating the amount of the settlement and using this incorrect amount to determine spousal support. We conclude the trial court did not abuse its discretion when dividing the marital property or determining spousal support. Therefore, we affirm the trial court's decision.
In domestic relations matters the standard of review is abuse of discretion. Booth v. Booth (1989), 44 Ohio St.3d 142, 144. An abuse of discretion connotes more than an error of law or judgment; it implies the trial court acted unreasonably, arbitrarily, or unconscionably. Blakemorev. Blakemore (1983), 5 Ohio St.3d 217, 219. Consequently, we may not substitute our judgment for that of the trial court unless, considering the totality of the circumstances, the trial court abused its discretion. Holcomb v. Holcomb (1989), 44 Ohio St.3d 128, 131. We cannot independently review the weight of the evidence, rather this court must be guided by the presumption that the trial court's findings are correct. Miller v. Miller (1988), 37 Ohio St.3d 71, 74.
Daniel's first assignment of error is that the trial court incorrectly classified the personal injury settlement income as martial property and divided it as such. When dividing marital property, the trial court must make written findings of fact that support the determination of the division of marital property and such findings must be in sufficient detail to allow meaningful review on appeal. Kaechele v. Kaechele
(1988), 35 Ohio St.3d 93, paragraph two of the syllabus. The trial court must first determine "what constitutes marital property and what constitutes separate property." R.C. 3105.171. Marital property is all property which is not separate property. R.C. 3105.171(A)(3). Separate property includes "[c]ompensation to a spouse for the spouse's personal injury, except for loss of martial earnings and compensation for expenses paid from marital assets." R.C. 3105.171(A)(6)(a)(vi). "The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." R.C. 3105.171(A)(6)(b). The characterization of the parties' property is a factual determination and will not be reversed if supported by some competent, credible evidence.Barkley v. Barkley (1997), 119 Ohio App.3d 155, 159.
Daniel argues that the settlement documents are detailed and clear. The initial net payment, ($116,840.20), was payable to both Daniel and Cheryl. One half of the initial net payment was placed into the joint checking account of Daniel and Cheryl and the other half into a savings account in Cheryl and Maggy's name. Two days after the deposit was made into the checking account, a check was written for Fifty Thousand Dollars ($50,000.00) to a life insurance and annuity corporation. Although it is unclear what happened to the other Fifty Thousand Dollars ($50,000.00) in the savings account, it appears the money was used for marital purposes, bills, household goods etc. Since this initial payment was divided equally between them, Daniel argues, Cheryl's loss of consortium claim was compensated. If taken as true, Cheryl's compensation is less than two and a half percent of the total settlement. Daniel also claims the remaining deferred lump sum payments and all the monthly payments are separate property since the checks are made payable only to him.
The record reveals the trial court did not classify the personal injury settlement as a marital asset. The judgment entry specifically states the monthly payments are not marital assets because they are payments for Daniel's personal injury claim. However, the personal injury settlement agreement does not contain any specific allocations for economic loss, such as wages and medical benefits, the personal injury or loss of consortium. In Ohio, it is well settled that where one spouse is injured, the other spouse is also damaged and may assert their own cause of action against the tortfeasor for those damages — loss of consortium. Clouston v. Remlinger Oldsmobile Cadillac, Inc. (1970),22 Ohio St.2d 65, 74.
Consortium consists of society, services, sexual relations and conjugal affection including companionship, comfort, love and solace. Id. Although loss of consortium is a derivative claim dependent upon the defendant's having committed a tort upon the spouse who suffers the bodily injury, it is a legally separate and independent claim. Schafer v. Allstate Ins.Co. (1996), 76 Ohio St.3d 553, 557. Any settlement proceeds to compensate for loss of consortium would qualify as separate property. Marcum v.Marcum (1996), 116 Ohio App.3d 606, 614. The court concluded the evidence was clear that Cheryl had incurred some loss of consortium, and a portion of the settlement represented compensation for her loss. The court identified loss of sexual relations, companionship, love and solace, and, in addition, having to administer to Daniel for years in unusual and unpleasant ways. Therefore, the question is not whether or not the settlement was a marital asset, but whether it was possible to tell which part of the settlement was for Daniel's injuries and which was for Cheryl's injuries.
Here, the record establishes the personal injury action was brought by both Daniel and Cheryl for damages suffered as a result of the automobile accident. In the first paragraph of the Release and Settlement Agreement, Daniel and Cheryl are collectively referred to as "Claimant." The document released and discharged the insurance company and the tortfeasor from "any and all past, present or future claims for damages, for or arising from, injuries which Claimant sustained * * * including, without limitation, any and all known or unknown claims for bodily and personal injuries, emotional trauma, or death and the consequences thereof." (Emphasis added.) This Release included Cheryl's loss of consortium, was signed by both Daniel and Cheryl, and was "fully binding and complete * * * among all the parties to this settlement agreement."
All the claims would have been separated in the judgment for the award if the case had proceeded to trial. Since the allocations were not made, the trial court opined ten percent (10%) of the total settlement, minus the $80,000.00 for Maggy, was attributable to loss of consortium. This was a reasonable decision, and consistent with the holding in Marcum,supra at 609, where that court concluded an unallocated injury settlement included ten percent for the loss of consortium claim. The trial court then declared a ten percent portion of the award for loss of consortium had already been received by Cheryl through the benefits of the monthly payments while living with Daniel, the sharing of the Initial Net Payment of $116,840.20 and the Deferred Payment A of $50,000. The balance due to Cheryl for her loss of consortium claim, according to the trial court, is $176,150. The court ordered that Cheryl receive $350 per month from the monthly payments until February of 2008, $15,000 from Deferred Payment C in February of 2003, and $25,000 and any remaining sum from Deferred Payment D in February of 2008. The details given indicate the trial court considered the facts and evidence and did not make a decision that is unreasonable, arbitrary or unconscionable. There appears to be no abuse of discretion in allocating part of the settlement proceeds to Cheryl as separate property for her loss of consortium claim. Therefore, Daniel's first assignment of error is meritless.
Daniel's second assignment of error claims the trial court erred in determining which portions of the personal injury settlement were guaranteed and which were contingent for use in considering spousal support. The trial court has broad discretion when determining spousal support based upon the particular facts and circumstances of each case, and such determination will not be disturbed by this court absent an affirmative showing that the trial court abused its discretion. Powellv. Powell (1989), 49 Ohio App.3d 56, 57, citing Cherry v. Cherry (1981),66 Ohio St.2d 348 . There are fourteen different factors which a court must consider when determining "whether spousal support is appropriate and reasonable, and in determining the nature, amount and terms of payment, and duration of spousal support." R.C. 3105.18(C)(1). R.C. 3105.18
does not prescribe a specific method of valuation for the court to follow. Focke v. Focke (1992), 83 Ohio App.3d 552, 554. The trial court must merely indicate the basis for its award in sufficient detail to permit proper appellate review in determining that such award is fair, equitable and in accordance with law. Hall v. Hall (Aug. 16, 1995), Monroe App. No. 713, unreported.
In determining spousal support, the trial court considered the following factors: 1) Daniel and Cheryl are both fifty-one years old; 2) Daniel's crushed back and subsequent medical problems are totally and permanently disabling; 3) Cheryl is disabled with emphysema and coronary obstructive pulmonary disease; 4) Daniel is receiving social security benefits of $586 per month; 5) Cheryl's future social security benefits will be $978 per month when temporary spousal support ceases; 6) Daniel is receiving workers compensation benefits of $720 per month and $3,500 per month from the personal injury settlement; 7) Cheryl will receive a pension of $266 per month once she turns fifty-five years old; 8) the parties' standard of living based upon their income both prior to and after Daniel's accident, and; 9) the parties' reported monthly expenses, including expenses for special dietary needs. These factors directly correspond to many of those listed by R.C. 3105.18(C)(1). Based upon these factors, the trial court ordered Daniel to pay Cheryl $1,200 per month in spousal support.
Daniel's argument that some non-guaranteed payments of $3,500 per month are considered when determining spousal support has some merit on its face. The spousal support was to commence as of the filing of the judgment in July of 1999 and proceed for a period of ten years. The twenty-year period of guaranteed monthly payments to Daniel ends in February of 2008. March of 2008 through July of 2009 is not under the guaranteed monthly payment plan. However, the monthly payments are guaranteed to Daniel as long as he lives, not just twenty years. R.C.3105.18(B) provides that any spousal support award shall terminate upon the death of either party unless expressly stated otherwise. Labedz v.Labedz (Dec. 30, 1997), Mahoning App. No. 96 C.A. 65, unreported at 6. The monthly payments would cease if Daniel died and in those circumstances the spousal support payments would no longer be required.
The trial court properly weighed the factors enumerated in R.C. 3105.18. This court cannot say the trial court abused its discretion in using the monthly payments from the personal injury settlement in calculating spousal support. Therefore, Daniel's second assignment of error is meritless.
Because we find both of Daniel's assignments of error to be meritless, we affirm the decision of the trial court.
VUKOVICH, P.J. and DONOFRIO, J., Concurs.